**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-60347
Summary Calendar

IN THE MATTER OF: APPLEWOOD CHAIR COMPANY,

Debtor.

APPLEWOOD CHAIR CO.,

Appellant,

VERSUS

THREE RIVERS PLANNING AND DEVELOPMENT DISTRICT,

Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi

February 28, 2000

Before SMITH, BARKSDALE and PARKER, Circuit Judges.

PER CURIAM:

Applewood Chair Co. appeals the district court's order affirming the bankruptcy court's order clarifying a confirmed plan of reorganization.  Because we find that *res judicata* does not bar the bankruptcy court's clarification, we affirm.

**FACTS AND PROCEEDINGS BELOW**

In this bankruptcy appeal, the debtor-appellant, Applewood

Chair Co. ("Applewood Chair"), filed a petition seeking relief under Chapter 11 on March 30, 1994. Prior to this filing, creditor-appellee, Three Rivers Planning and Development District ("Three Rivers") loaned $100,000 to Applewood Chair and to Ronnie and Margaret Spivey ("the Spiveys"), as evidenced by a promissory note dated November 22, 1993. As security for this note, Applewood Chair executed a security agreement, through its president, Ronnie Spivey, granting Three Rivers interest in all equipment parts and inventory of Applewood Chair. In addition, as guaranty for the note, the Spiveys, individually executed a Mortgage Agreement, granting Three Rivers a mortgage lien on real property they owned.

On May 2, 1994, Applewood filed a motion to approve the sale of its assets that was subsequently granted by the bankruptcy court on May 31, 1994 ("Sale Order"). As part of the relief granted by the Sale Order, Applewood sold substantially all of its assets to another entity or an entity to be formed, which was identified as "NewCo." A portion of the assets to be sold consisted of the equipment used as collateral for the Three Rivers loan which was now to be transferred NewCo. NewCo was to assume the Three Rivers indebtedness due and owing by Applewood Chair. Regarding Three Rivers's secured interest, the motion (approved by the Sale Order) stated the following:

> Movant's equipment currently serves as collateral to
> secure an indebtedness of movant to Three Rivers. The
> balance of that indebtedness is approximately
> $97,000.00, and the equipment, when valued at a going

concern value, has a value of approximately that same amount.  It is unclear as to whether the liquidation value of the equipment is equal to or greater than the amount of the Three Rivers' [1] indebtedness.  In any event, the equipment will be sold to NewCo, in exchange for NewCo's agreement to assume all of the movant's obligations and indebtedness to Three Rivers under the existing loan documents.  Three Rivers' first lien upon the equipment shall remain unaltered.  *Upon assumption, all claims of Three Rivers, with respect to the equipment, will be discharged and forgiven, as to all existing obligors, and NewCo will assume all of the existing obligors' obligations in connection with Three Rivers' claims and debts . . . .* (emphasis added).

Based on the language of this Motion, Three Rivers asserts that it understood that NewCo would assume all obligations and indebtedness of the debtor to Three Rivers "with respect to the equipment" only, pursuant to the above-referenced promissory note and security agreement.  The individual obligations of the Spiveys remained intact pursuant to the terms of the promissory note and the security agreement.  Applewood Chair, on the other hand, argues that the Sale Order, and the bankruptcy court's order approving of the reorganization plan, discharged not only

---

[1]  With a few limited exceptions, possessive singular nouns are formed by adding an apostrophe and an s, whatever the final consonant.  *See* William Strunk and E.B. White, THE ELEMENTS OF STYLE 1 (3d ed. 1979); *see also* Bryan A. Garner, THE ELEMENTS OF LEGAL STYLE 23 (1991).  The University of Chicago Press recognizes the general rule with a few exceptions, but also notes a distinction employed by certain writers and editors.  *See* THE CHICAGO MANUAL OF STYLE 201 (14th rev. ed. 1993) ("If it ends with a *z* sound, treat it like a plural; if it ends with an *s* sound, treat it like a singular.").  *But see id.* ("[University of Chicago Press] is willing, however, to accept other ways of handling these situations if they are consistently followed throughout a manuscript.").  This opinion will consistently follow the traditional rule of adding 's to form the possessive of singular nouns regardless of the final consonant.

the debts of Applewood Chair, but also discharged all officers, directors and shareholders from any debt due and owing from those claims that arose prior to the confirmation of the reorganization plan--including the Spiveys' individual guaranty of the debt owed Three Rivers.

On June 13, 1994, pursuant to the above-referenced motion and Sale Order, Three Rivers entered into an Assumption Agreement with the purchaser of the Applewood Chair's assets, Allcreek Holdings, Inc., ("Allcreek"), which entity was described in the above motion and Sale Order as NewCo. Regarding the Spiveys' individual indebtedness, the Assumption Agreement stated the following:

> That this assumption agreement shall in no way be considered a novation nor shall it be construed in any way to impair any of the current existing collateral taken by Three Rivers at the time of the initial execution of the Promissory Note. The parties further agree that the individual guarantees shall not be impaired and that this shall not be considered to be a novation with regard to the individual guarantees of said note.

Accordingly, pursuant to the terms of the Assumption Agreement, only the indebtedness of Applewood Chair to Three Rivers was assumed by Allcreek (NewCo). The individual indebtedness of the Spiveys (as per the promissory note and mortgage agreement) to Three Rivers, was not assumed by Allcreek, nor was such indebtedness released by Three Rivers.

On September 1, 1994, Allcreek changed its corporate name to Applewood Furniture Industries, Inc. ("Applewood Furniture"). In

approximately February of 1995, Applewood Furniture was in default and the Spiveys, individually, were in default as well for failure to make payments pursuant to the terms of the note. When Three Rivers called upon Applewood Furniture to pay the remaining indebtedness, it learned that Applewood Furniture was no longer in business. In addition, when Three Rivers attempted to enforce its property lien on the equipment (collateral), it learned that the equipment was missing and could not be found.

In January of 1996, Three Rivers began efforts to foreclose on the referenced mortgage agreement with respect to the real property put up as collateral by the Spiveys. During the course of these foreclosure efforts, counsel for Three Rivers received a letter from counsel for Ronnie Spivey indicating that, with respect to the foreclosure on the property, the district court's confirmation of the reorganization plan not only discharged the debts owed by the Applewood Chair, but that it would also discharge Applewood Chair's officers, directors and principals from any debt owed by those individuals to third parties. At this time, Three Rivers temporarily suspended efforts to foreclose and filed a motion for clarification of the Sale Order, which resulted in the entry of the bankruptcy court's July 31, 1997 order and subsequent supplemental order of October 3, 1997.

In its motion for clarification, Three Rivers argued that Applewood Chair's Chapter 11 bankruptcy proceedings did not affect the Spivey's individual liability, nor did those

-5-

proceedings affect Three Rivers' right to foreclose on the mortgage agreement after the default. The bankruptcy court agreed and stated the following in its July 31 order:

> (1) This Court has continuing jurisdiction to clarify and/or interpret the intent and effect of its orders rendered in this Bankruptcy proceeding; and

> (2) This Court's Order Approving The Sale of Substantially All Of The Assets Of The Debtor-in-Possession, etc., dated May 31, 1994, and subsequent Order Confirming Plan of Reorganization, dated July 25, 1995, *contain insufficient language and were not intended to have the effect of releasing the individual indebtedness of Ronnie C. Spivey and Margaret Spivey to Three Rivers Planning and Development District, Inc.*, as evidenced and created by that certain promissory note dated November 22, 1993, and that certain mortgage agreement dated November 22, 1993. (emphasis added).

On May 3, 1999, the district court affirmed the bankruptcy court's orders. Applewood Chair filed its notice of appeal on May 13, 1999.

## ISSUES ON APPEAL

Applewood raises the following issues on appeal:

1. Whether Three Rivers's motion for clarification of the Sale Order should have been filed as an adversary proceeding, as opposed to a motion, pursuant to Bankruptcy Rule 7001.

2. Whether Three Rivers is barred from pursuing its claim against the Spiveys by the doctrine of *res judicata*.

## STANDARD OF REVIEW

We review the bankruptcy court's ruling on these issues as if they were on direct appeal to us. *In re Charrier*, 167 F.3d 229, 232 (5th Cir. 1999). We review the bankruptcy court's fact findings under the clearly erroneous standard and its conclusions

-6-

of law *de novo*.  *See id.*

## THREE RIVERS'S MOTION FOR CLARIFICATION

Applewood Chair argues that Three Rivers's motion for clarification should have been filed as an adversary proceeding. Applewood Chair categorizes Three Rivers's motion as a prayer for declaratory relief and for a determination of the validity of Three Rivers's claim against the Spiveys.  Three Rivers argues that its motion sought to clarify the "intent and effect" of the bankruptcy court's Sale Order and order confirming the reorganization plan as to the individual indebtedness of the Spiveys pursuant to the promissory note and mortgage agreement. We agree with the latter argument.

The relief requested by Three Rivers does not qualify as a type of proceeding required by Rule 7001 to be brought as an adversary proceeding.[2]  The validity of Three Rivers's lien against the equipment which belonged to Applewood Chair was never in question.  This equipment was part of the bankruptcy estate until it was sold to Allcreek who then assumed Three Rivers's lien against the equipment.  Three Rivers's motion for clarification was properly filed as a motion rather than an adversary proceeding.

### *RES JUDICATA* EFFECT OF BANKRUPTCY COURT'S ORDERS

---

[2]  Bankruptcy Rule 7001 lists 10 types of proceedings (e.g., to determine whether a debt can be discharged, to obtain equitable relief) that qualify as "adversary proceedings" and require the filing of a complaint, as opposed to a motion, to resolve.

Applewood Chair argues that Three Rivers was barred from seeking clarification of the Sale Order under the theory of *res judicata*. In *Republic Supply v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987), we held that the confirmation of a clear and "unambiguous plan" of reorganization that "expressly released" a third-party guarantor has a *res judicata* effect on a subsequent action against the guarantor who is also a creditor. *See Shoaf*, 815 F.2d at 1049-50. Because we find *Shoaf* distinguishable from the facts of this case, we reject Applewood Chair's argument.

The general rule is that a discharge in bankruptcy does not affect a guarantor's liability. *See* 11 U.S.C. § 524(e) (1994) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."); *see also N.C.N.B. Texas Nat'l Bank v. Johnson*, 11 F.3d 1260, 1266 (5th Cir. 1994) (holding that to allow a confirmed reorganization plan to effect an accord and satisfaction on a loan guaranty "would defeat the purpose of loan guaranties; after all, a lender obtains guaranties specifically to provide an alternative source of repayment in the event that the primary obligor's debt is discharged in bankruptcy"); *Matter of Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1351 (5th Cir. 1989) ("A discharge in bankruptcy will simply not affect the liability of a guarantor."). The Spiveys did not file for individual bankruptcy protection, Applewood Chair was the debtor in this bankruptcy proceeding. Thus, our analysis of this issue should

-8-

bear in mind the general rule codified in § 524.  *See, e.g.,*
*United States v. Stribling Flying Serv., Inc.*, 734 F.2d 221, 223
(5th Cir. 1984) (noting that the obligations of individual third-
party guarantors were not affected by a corporate debtor's
Chapter 11 proceeding).

In *Shoaf*, this Court recognized the *res judicata* effect of
an approved reorganization plan which expressly provided for the
release of a third party guarantor who was also a creditor.  *See*
815 F.2d at 1051-55.  The issue stated in *Shoaf* illustrates the
limited nature of its holding: "In this appeal we address the
question whether the bankruptcy court's confirmation order which,
beyond the statutory grant of the Code, expressly released a
third-party guarantor, is to be given res judicata effect."  815
F.2d at 1047.  The approved final reorganization plan contained a
specific paragraph for the release of Shoaf's guaranty.  *See id.*
at 1049.  Importantly, the final reorganization plan confirmed by
the bankruptcy court in *Shoaf* omitted a paragraph that provided
for a general release,[3] leaving the paragraph specifically
releasing the Shoaf guaranty in the plan.  *See id.*

The reorganization plan approved by the bankruptcy court in

---

[3]  Appellant's brief highlights this *omitted* language from
*Shoaf* and compares the language to the release language in this
case.  *See Shoaf*, 815 F.2d at 1050 ("Neither this motion, nor the
bankruptcy court's order granting the relief, addressed the
provision of the Plan relating to the release of Shoaf's
guaranty, but dealt only with provisions of former paragraph 7
relating to general releases, a paragraph which had been
eliminated before the Plan was confirmed.").

the case *sub judice* contained no provision *specifically* releasing the personal guaranties of the Spiveys. The plan did contain a general release that stated the following:

> The provisions of the confirmed plan shall bind all creditors and parties in interest, whether or not they accept the plan and shall discharge the Debtor, its officers, shareholders and directors from all claims that arose prior to Confirmation.

Applewood Chair argues that because Mr. Spivey was an officer, director and shareholder, and because Mrs. Spivey was a shareholder of the debtor company that this cases falls under the rationale of *Shoaf*. This argument invites this Court to *extend* that holding to an inapposite factual situation. We decline the invitation.

As Three Rivers points out in its brief, the circumstances which would justify abrogation of the general rule codified in § 524--i.e., application of *Shoaf*--are not present in this case. No specific discharge or release of the Spiveys' individual guaranties to Three Rivers was enumerated or approved by the bankruptcy court in this matter. The bankruptcy court recognized this and stated as much in its July 31, 1997, order when it noted that the Sale Order and reorganization plan "contain[ed] insufficient language and were not intended to have the effect of releasing the individual guaranties of Ronnie C. Spivey and Margaret Spivey to Three Rivers." The lack of a specific discharge distinguishes this situation from that in *Shoaf* and thus, does not warrant the application of its holding as

-10-

appellants assert.  *See In re Taylor*, 132 F.3d 256, 260 (5th Cir. 1998) (noting that the bankruptcy court's order of confirmation in *Shoaf* "included express language noting the release of the guarantor"); *Enterprise Financial Grp. v. Curtis Mathes Corp.*, 197 B.R. 40, 46 (E.D. Tex. 1996) (refusing to apply the *res judicata* principle of *Shoaf* "to a retention-of-jurisdiction provision contrary to the Code but nonetheless placed in a plan which was confirmed and never appealed"); *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 325 (Tex. App.--El Paso 1995, writ denied) (distinguishing *Shoaf* because the "issue in *Shoaf* was the *res judicata* effect of a confirmed reorganization plan on a guarantor where the confirmed plan expressly provided for the release of the guarantor who was a party to the bankruptcy proceedings").

The Sale Order only discharged those claims of Three Rivers "with respect to the equipment."  The individual guaranties of the Spiveys--unlike the specific releases of the individual guaranty in *Shoaf*--were not discussed in the bankruptcy proceedings.  The assumption agreement entered into, pursuant to the Sale Order, between Three Rivers and the purchaser of the debtor's assets (Allcreek) supports appellee's argument. Thus, the individual guaranties of the Spiveys were not assumed by Allcreek, nor were the guaranties released by Three Rivers.

## CONCLUSION

Because we decline to extend the holding of *Shoaf* to

situations where a plan of reorganization does not contain a specific discharge of the indebtedness of a third-party, we affirm the decision of the district court.

AFFIRMED