**IBERIABANK, Appellant,**

v.

**Bradford GEISEN, and FFS Data, Inc., Appellees.**

**No. 13–cv–80635–KMM.**

United States District Court,
S.D. Florida.

Signed March 4, 2014.

Sean Terrence Cork, Squire Sanders (US) LLP, Miami, FL, Traci Hope Rollins, Squire Sanders (US) LLP, West Palm Beach, FL, for Appellant.

Gregory Stewart Grossman, Astigarraga Davis Mullins & Grossman, Miami, FL, Bernice Cindy Lee, Bradley Scott Shrailberg, Shrailberg, Ferrara & Landau, P.A., Boca Raton, FL, for Appellees.

## *ORDER*

K. MICHAEL MOORE, District Judge.

THIS CAUSE is before the Court on appeal from the Bankruptcy Court's May 1, 2013 Order Denying Motion for Determination that Confirmation Order and Discharge Injunction Do Not Release Wholly Unrelated Claims Against Non–Debtors. Bankruptcy case no. 09–38395–EPK ("Bankr. Case"), ECF No. 855. Appellant, Iberiabank, filed its Initial Brief (ECF No. 8). Appellee, FFS Data, Inc., filed an Answer Brief (ECF No. 11). Appellee, Bradford Geisen, filed an Answer Brief (ECF No. 12) adopting the Answer Brief filed by FFS Data, Inc., and Appellant filed a Reply Brief (ECF No. 16). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). For the reasons stated herein, the Bankruptcy Court's Order is affirmed.

## I. BACKGROUND

FFS Data, Inc. ("FFS") filed for Chapter 11 Bankruptcy protection on December 23, 2009, in the United States Bankruptcy Court for the Southern District of Florida. Bankr. Case, ECF No. 1. Bradford Geisen ("Geisen") was the President and 100% shareholder of FFS, and owned a 48% interest in Siena Realty Associates, LLC ("Siena"). Appellant Br., at 3; Brief for Appellees FFS Data, Inc. ("Answer"), 2–3. Siena was FFS's landlord. *Id.* Siena and Iberiabank's predecessor-in-interest were parties to a loan agreement ("Siena Loan"). Answer, at 3. The Siena Loan, which ultimately totaled 10.6 million dollars, was made on or about June 27, 2007. Appellant Br., at 3. The Siena Loan was

secured by a mortgage on real property owned by Siena. *Id.* The Siena Loan was separately guaranteed by FFS and Geisen, among others. *Id.* Geisen did not waive his contribution rights in his guaranty of the Loan. Answer, at 4.

Three weeks before FFS filed for Chapter 11, on December 1, 2009, Siena was in default of its obligations on the Siena Loan because it failed to make its requisite monthly payments. Appellant Br., at 3–4. When FFS filed for bankruptcy, Iberiabank became a general unsecured creditor of FFS by virtue of FFS's guaranty of the Siena Loan. *Id.* at 4. Iberiabank's original claim in the FFS bankruptcy was approximately 10.6 million dollars, the amount under the Siena Loan guaranteed by FFS. *Id.*

On April 22, 2010, FFS filed its original Chapter 11 plan of reorganization. Bankr. Case, ECF No. 107. On October 13, 2010, FFS circulated an amended plan. Appellant Br., at 4. On October 14, 2010, Siena, Iberiabank, Geisen and other parties, entered into a forbearance agreement regarding the Siena Loan. *Id.* Iberiabank agreed to forebear from exercising its remedies for ninety days unless a default or sale of the mortgaged property occurred. *Id.* On October 16, 2010, FFS filed its amended plan for reorganization. Bankr. Case, ECF No. 243.

On November 12, 2010, FFS and Iberiabank entered into a settlement agreement. Bankr. Case, ECF No. 307. The settlement provided that Iberiabank's unsecured claim would be allowed in the amount of two million dollars. *Id.* There was no mention or reference of Geisen's personal guaranty of the Siena Loan in the settlement agreement. *Id.* On December 22, 2010, the settlement agreement was approved in part and denied in part by the Bankruptcy Court. Bankr. Case, ECF No. 492. The settlement agreement was only denied to the extent that it required Iberiabank to vote in favor of the plan of reorganization. *Id.*

On March 4, 2011, the Bankruptcy Court held a hearing on confirmation of the plan of reorganization. Bankr. Case, ECF No. 863. The Bankruptcy Court found that "the debtors have met all the requirements for consensual confirmation under Section 1129(a), and the plan will be confirmed." *Id.* at 21. Counsel for Iberiabank did not attend the confirmation hearing, nor did they raise any objections to the plan. Answer, at 7. Iberiabank had previously filed the Ballot accepting the Plan on December 13, 2010. *Id.*, at 3. On March 21, 2011, the Bankruptcy Court entered an order confirming FFS's plan of reorganization ("the Plan"), without objection. Bankr. Case, ECF No. 826. No direct appeal was filed.

When the collateral securing the Siena Loan was sold, a deficiency remained, and the Siena Forbearance Agreement gave Iberiabank the right to seek the balance from those who guaranteed the loan. Appellant Br., at 6. Iberiabank thus commenced collection efforts in state court in July 2012 against the guarantors of the Siena Loan, including Geisen. *Id.* When Geisen answered the complaint in February 2013, he asserted affirmative defenses claiming that the Plan released him from his personal guaranty of the Siena Loan. *Id.*

As a result, on March 27, 2013, Iberiabank reopened the Bankruptcy Case and filed a Motion for Determination that Confirmation Order and Discharge Injunction Do Not Release Wholly Unrelated Claims Against Non–Debtors. Bankr. Case, ECF Nos. 855, 856. On April 16, 2013, FFS filed a response and Geisen filed a joinder to such response. Bankr. Case, ECF Nos. 860, 861. On April 18, 2013, the Bankruptcy Court held a hearing on the Motion and made an oral ruling denying the Motion.

Bankr. Case, ECF No. 871. On May 1, 2013, the Bankruptcy Court entered an Order denying the Motion. Bankr. Case, ECF No. 866. Iberiabank is appealing from that Order.

## II. STANDARD OF REVIEW

■■■ While a district court reviews the bankruptcy court's legal conclusions *de novo*, it "must accept the bankruptcy court's factual findings unless they are clearly erroneous...." *In re Englander*, 95 F.3d 1028, 1030 (11th Cir.1996) (citations omitted). Mixed questions of law and fact are reviewed *de novo*. *In re Lentek Int'l, Inc.*, 346 Fed.Appx. 430, 433 (11th Cir.2009). "Under *de novo* review, [a] Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." *In re Brown*, No. 6:08–cv–1517–Orl–18DAB, 2008 WL 5050081, at *2 (M.D.Fla. Nov. 19, 2008) (citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir.2001)).

## III. DISCUSSION

There are two issues before this Court on appeal: (1) whether the Bankruptcy Court erred in concluding that the phrase "its officer and/or director Bradford Geisen" in Section 8.13 of the Plan is "merely descriptive;" and (2) whether the Bankruptcy Court erred in its determination that the Plan released non-debtor Geisen from his personal guaranty of the Siena Loan.

Turning to the first issue, the Court finds that the Bankruptcy Court was correct in its determination that the phrase, "its officer and/or director Bradford Geisen" in Section 8.13 of the Plan, is descriptive of Geisen's role at FFS. Section 8.13 provides:

In exchange for releasing the Insider Claims totaling $1,000,817.30, and providing the New Value Payment, all holders of Claims agree to the general release of Bradford Geisen.

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtor and the Debtor in Possession, the Estate, any of the assets or properties under the Plan, or *its officer and/or director, Bradford Geisen*. Except as otherwise provided herein, (i) on the Effective Date, all such Claims against the Debtor and *its officer and/or director, Bradford Geisen*, and Equity Interest in the Debtor shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, or *its officer and/or director, Bradford Geisen* any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any enti-

ty would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

Debtor's Amended Plan of Reorganization, Bankr. Case, ECF No. 243, at 30 (emphasis in the original).

■ "In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.),* 456 F.3d 668, 676 (6th Cir.2006). "When interpreting the confirmed plan, a court should utilize state law under long-settled contract principles." *Lefkowitz v. Michigan Trucking (In re Gainey Corp.),* 447 B.R. 807, 818 (Bankr.W.D.Mich.2011) (internal quotations omitted). Under Florida law, "[w]hen contractual language is clear and unambiguous, courts cannot indulge in construction or interpretation of its plain meaning." *Detroit Diesel Corp. v. Atl. Mut. Ins. Co.,* 18 So.3d 618, 620 (Fla.Dist. Ct.App.2009) (internal quotations omitted).

Iberiabank argues that the phrase "its officer and/or director, Bradford Geisen" used in Section 8.13 is actually qualifying the scope of Geisen's release. Appellant Br., at 13–17. Iberiabank argues that the phrase can be read to limit Geisen's release to claims that relate to Geisen's actions as an officer and/or director of FFS, such as claims alleging breach of fiduciary duty. April 18, 2013 Hearing Transcript ("R."), at 18, Bankr. Case, ECF No. 871; Appellant Br., at 15. To support its argument for limitation of the release, Iberiabank cites a number of contract principles: (1) an interpretation which gives a reason-able meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable; (2) giving effect to the specific language "its officer and/or director" provides the Plan with a reasonable construction; and (3) the underlining of the phrase in Section 8.13 suggests that the language must be given effect. Appellant Br., at 14–16. However, the Court does not find any of these contract principles availing.

■ Instead, the Court agrees with the Bankruptcy Court's determination that the phrase "its officer and/or director, Bradford Geisen" is merely descriptive of Geisen's role at FFS. The phrase is intended to tell everybody reading the release who Geisen is and that he had a relationship to the debtor and was therefore deserving of a release. The language of the release simply does not reflect the limitation argued for by the Iberiabank. The first sentence of Section 8.13 specifically states that Geisen is receiving a "general release." To then qualify the release so that it only applies to certain claims would be at odds with the first sentence of the section. The underlining was intended to draw the attention of "all holders of Claims" to the fact that they were agreeing to give FFS's officer and/or director Bradford Geisen a general release. Furthermore, if Iberiabank wanted the release to be limited to liability that Geisen incurred in his role as officer and/or director, they should have objected to the language as written and confirmed in the Plan. However, in failing to do so, all holders of claims, including Iberiabank, agreed to a general release of Geisen.[1]

---

1. Since the Court finds that Section 8.13 is clear and unambiguous, it sees no reason to consider extrinsic evidence to ascertain the meaning of the release. *See Jenkins v. Eckerd Corp.,* 913 So.2d 43, 52 (Fla.Dist.Ct.App. 2005). However, even if this Court had con-sidered extrinsic evidence, such as the forbearance agreement, Geisen's decision to continue paying Iberiabank for other obligations not related to the Siena Loan, or the possibility that a suit for breach of fiduciary duty was a real concern for Geisen at the time the

The next issue is whether the release in Section 8.13 extends to Geisen's personal guaranty of the Siena Loan. As previously mentioned, *supra* at pages 574–575, Geisen was the President and 100% shareholder of FFS, and owned a 48% interest in Siena. Siena was FFS's landlord. Siena and Iberiabank were parties to a loan, which was guaranteed by FFS and Geisen, among others. When Siena defaulted, Iberiabank became a creditor in FFS's Chapter 11 bankruptcy on the basis of the guaranty. Iberiabank's claim against FFS was settled during the Chapter 11 case and that settlement was incorporated into the Chapter 11 plan, which was later confirmed by the Court. Now, over two years later, Iberiabank is attempting to sue Geisen for the deficiency left following the sale of the collateral underlying the Siena Loan on the basis of Geisen's personal guaranty.

The Bankruptcy Court found that the first sentence of Section 8.13, stating that all holders of claims agreed to a general release of Geisen, supported a release of Geisen's guaranty of the Siena Loan. R. at 33–35, Bank. Case, ECF No. 871. The Bankruptcy Court relied on *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009), for support. In *Travelers*, the Supreme Court held that the terms of an injunction barring "Policy Claims" against the insurers, which was an integral part of a settlement and was later incorporated by reference into the bankruptcy court's order confirming the plan of reorganization, barred direct actions in state court against the insurers for violations of state consumer protection statutes or common law duties. *Id.* at 141–151, 129 S.Ct. 2195. Relying on the Supreme Court's determination in *Travelers* that the term "Policy Claims" in the reorgani-

zation plan encompassed direct actions, the Bankruptcy Court stated that the question before the Court was "whether the language in the plan covers the claim presented by Iberiabank...." R. at 36, Bankr. Case, ECF No. 871. The Bankruptcy Court then interpreted its previous Order so that the release contained therein did, in fact, cover Iberiabank's claim. *Id.*

Appellant's argue, however, that the question is not whether the language of the release is *broad enough* to cover Geisen's personal guaranty but whether the language of the release is *specific enough* to cover Geisen's personal guaranty. Appellant Br., at 11–13. Appellant's ask the Court to apply the standard in *Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*, 203 F.3d 914 (5th Cir.2000) (per curiam), requiring specificity for a release to extend to a non-debtor guaranty, to the instant case. *Id.* at 919–20. However, even applying Fifth Circuit case law to the present case, the Court still finds that Geisen was released from his personal guaranty of the Siena Loan.

In *Applewood*, Three Rivers made a loan to the debtor and the Spiveys, the debtor's President and shareholder. *Id.* at 915–16. The Spiveys personally guaranteed the loan to the debtor. *Id.* Following confirmation of the debtor's reorganization plan, Three Rivers sought to enforce the Spiveys' guaranty, and the Spiveys argued that the debtor's reorganization plan discharged their personal liability. *Id.* at 917. The language of the release in *Applewood* was as follows:

> The provisions of the confirmed plan shall bind all creditors and parties in interest, whether or not they accept the plan and shall discharge the Debtor, its

release was drafted, the Court still would have reached the same conclusion for the

reasons set forth in Appellee FFS's Answer, at 16–17.

officers, shareholders and directors from all claims that arose prior to Confirmation.

*Id.* at 919. Applewood argued that because Spivey was an officer, director or shareholder, and because Mrs. Spivey was a shareholder of the debtor, they were released of their guaranty by the reorganization plan. *Id.* at 917. The Court disagreed and the Fifth Circuit ultimately found that because "no specific discharge or release of the Spiveys' individual guaranties to Three Rivers was enumerated or approved by the bankruptcy court in this matter" there was no reason to abrogate the general rule that bankruptcy has no effect on the liability of a guarantor of the debtor. *Id.* at 919.

Appellee argues that *Applewood* is not binding and is factually inapposite to the instant case.[2] Answer, at 19–20. Furthermore, Appellee argues that, if the Court is considering cases in the Fifth Circuit, the case *FOM Puerto Rico S.E. v. Dr. Barnes Eyecenter Inc.*, 255 Fed.Appx. 909 (5th Cir.2007), is more on point with facts of the instant case. This Court agrees.

In *FOM,* the question before the Court of Appeals was whether the release of claims provision in the bankruptcy plan was sufficiently specific to include a creditor's claim against a guarantor. *Id.* at 911. The Fifth Circuit concluded that the release was sufficiently specific. *Id.* at 913. The court concluded that the non-debtor release of the debtor's affiliate, Eyemart Express, who allegedly executed a guaranty of a lease between a landlord and the debtor, barred the landlord's claims against Eyemart Express. The *FOM* release provided that:

> Any claims held by Debtor's insiders, including but not limited to Debtor's affiliate Eyemart Express, Ltd., shall be subordinated to the claims of all other creditors of [the debtor's] estate, and no distributions shall be made on account of same until all other claims are paid in full pursuant to this Plan. In return for the subordination of their claims, Debtor's insiders shall not have or incur any liability to any person for any claim, obligation, right, cause of action or liability, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to [the debtor], its Bankruptcy Case, or the Plan; and all claims based upon or arising out of such actions or omissions shall be forever waived and released.

*Id.* at 910. The Fifth Circuit compared the release in FOM to the release in *Applewood,* where the court did not find the specificity required to release a non-debtor from a guaranty, and to the release in another case, *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987), where

---

**2.** Appellee additionally argues that Appellant's Motion should be viewed as an impermissible collateral attack on the Bankruptcy Court's Order confirming the Plan. Answer, at 18–19. However, this Court agrees with the Appellant's argument that it is not collaterally attacking the Bankruptcy Court's Order confirming the plan, but rather, asking the Court to interpret the scope of that Order as it applies to the guaranty. *See Travelers Indem. Co v. Bailey,* 557 U.S. 137, 138, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009) (bankruptcy courts have jurisdiction to interpret and enforce their own prior orders) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). The Court is not dealing with the issue of whether the Bankruptcy Court could have released Geisen's guaranty of the Siena Loan. The Bankruptcy Court's confirmation of the Plan, without objection or direct appeal, is *res judicata* on that issue. The question before this Court is instead whether the release, as written, extended to Geisen's guaranty of the Siena Loan.

the court found that the bankruptcy court's order released the non-debtor from a guaranty. *See FOM*, 255 Fed.Appx. at 911–912. The bankruptcy court's order in *Shoaf* specifically stated: "[The] release shall include the release of any guarantees given to any creditor of the debtor which guarantees arose out of the debtor's business dealings with any creditor of the debtor. . . ." 815 F.2d at 1054.

The Fifth Circuit in *FOM* concluded that the *FOM* release fell "somewhere between *Shoaf* and *Applewood Chair* with respect to the specificity of the release" and decided that several factors supported the conclusion that the bankruptcy release barred the landlord's claims against Eyemart Express based on the guaranty. *Id.* at 912. The factors were: (1) the *FOM* Release was an integral part of the plan because Eyemart subordinated its claims to those of other creditors in return for their non-debtor release; (2) at the confirmation hearing, counsel specifically noted that Eyemart received the release in consideration for its agreement to subordinate its claims; and (3) the language of the release was more specific than the release in *Applewood* because it explicitly mentioned Eyemart as the party receiving the non-debtor release and also limited the claims released to those relating to the debtor, the bankruptcy case, or the plan. *Id.* at 912.

Plaintiff–Appellant in *FOM* specifically argued that "because the Plan [did] not mention releasing 'guaranties' or 'the debts of the debtor,' the Plan [was] too general and failed at the time of confirmation to put [Plaintiff–Appellant] on notice that its claims might be barred." *Id.* However, the Court found that, applying traditional tools of contractual interpretation, the reasonable interpretation of the release and the reorganization plan was that the release applied to all claims, in-

cluding guaranties, against Eyemart and that "[t]he failure to include certain words or phrases [was] thus not dispositive." *Id.*

Recognizing that both *Applewood* and *FOM* are merely persuasive authority, the Court finds that, if it is to look to the Fifth Circuit for guidance on the issue presented in the instant case, the release here is more similar to the release in *FOM* than the release in *Applewood.* Furthermore, the factors outlined in *FOM* support release. As to the first factor, there is no doubt that Geisen's release was an integral part of the Plan. Geisen made a number of contributions and concessions in order to facilitate reorganization. *See* Answer, at 5. The language of Section 8.13 specifically states that Geisen received the release "in exchange for" releasing his claims totaling over one million dollars. The second factor also supports release. Counsel at the confirmation hearing specifically detailed Geisen's contributions to the Plan, which supported the Court's confirmation of his non-debtor release. March 4, 2011 Confirmation Hearing, at 19–20, Bankr. Case, ECF No. 863. The third factor only supports release in part. The release here is more specific than the release in *Applewood* in that it specifically names Geisen as the individual receiving a general release. However, unlike the release in *FOM*, there are no limitations on the release being given to Geisen in the first sentence of Section 8.13 since it is a "general release." However, even with this difference, the Court finds that the factors, on the whole, support release.

As a result, the Court finds that under either the broader standard used by the Bankruptcy Court to determine that Geisen's personal guaranty was covered by the release, or the more specific standard used by the Fifth Circuit, the release at issue

here extended to Geisen's personal guaranty of Iberiabank's loan to Siena.[3]

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Bankruptcy Court's May 1, 2013 Order Denying Motion for Determination that Confirmation Order and Discharge Injunction Do Not Release Wholly Unrelated Claims Against Non–Debtors (Bankr. Case no. 09–38395–EPK, docket entry 855) is AFFIRMED.

It is further ORDERED AND ADJUDGED that the Clerk of Court shall CLOSE this case. All pending motions not otherwise ruled upon are DENIED AS MOOT.

DONE AND ORDERED.

---

3. Appellant's point out in their Brief that in the instant case, Geisen did not guarantee a loan made to the Debtor, FFS. Reply Br., at 11–12. Instead, Geisen guaranteed a loan given by Iberiabank to a separate (though related) entity, Siena. In this way, the guaranty was one step removed from the facts in *FOM* and *Applewood* where the non-debtor had guaranteed a loan made to the debtor. However, these cases are helpful in determining whether the release in the instant case extended to Geisen's personal guaranty of the Siena Loan. This is because Iberiabank became a creditor of FFS due to FFS's guaranty of the Siena Loan and Siena's default. Giesen and FFS were co-guarantors of this loan. Furthermore, Iberiabank settled its claim with FFS, which was included in the confirmed Plan. Thus, while Iberiabank's loan was made to Siena, it was a part of the Chapter 11 Plan and thus Iberiabank was on notice that the release, as written, would apply to Geisen's personal guaranty of the Siena Loan.