# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 5, 2016

Lyle W. Cayce
Clerk

No. 15-10287

JOSE E. HERNANDEZ, and all others similarly situated under 29 U.S.C. 216(b),

      Plaintiff - Appellant

v.

LARRY MILLER ROOFING, INCORPORATED; LARRY MILLER,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-716

Before STEWART, Chief Judge, KING and HIGGINSON, Circuit Judges.

KING, Circuit Judge:*

Plaintiff–Appellant Jose Hernandez filed a claim for unpaid overtime wages in violation of the Fair Labor Standards Act against Defendants–Appellees Larry Miller Roofing, Inc., and Larry Miller individually. The district court stayed the action when LMRI filed a Suggestion of Bankruptcy. LMRI filed a reorganization plan with the bankruptcy court, and Hernandez voted to accept the plan. In accordance with this plan, Hernandez received

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10287

thirty percent of his FLSA claim for unpaid wages.  Following the confirmation of LMRI's reorganization plan by the bankruptcy court, the district court reopened Hernandez's FLSA case against Miller individually.  The court granted summary judgment to Miller on the FLSA claim, reasoning that LMRI's reorganization plan released Hernandez's FLSA claim against both LMRI and Miller.  Because we interpret LMRI's reorganization plan as releasing only Hernandez's FLSA claim against LMRI, we REVERSE the judgment of the district court and REMAND the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 7, 2011, Plaintiff–Appellant Jose Hernandez filed a claim against his former employers, Defendants–Appellees LMRI and Larry Miller, the president of LMRI, alleging violations of the FLSA, 29 U.S.C. § 207.  Miller claimed that while he was employed by LMRI between 2005 and March 2011, LMRI did not pay him overtime wages for hours worked beyond forty hours each week and did not compensate him for travel to job sites.

On November 12, 2012, LMRI filed a Suggestion of Bankruptcy under Chapter 11 of the United States Bankruptcy Code, and the district court stayed Hernandez's FLSA case.  On March 11, 2013, Hernandez filed a proof of claim in LMRI's bankruptcy action, alleging $47,698 in unpaid wages.  After LMRI filed its "Disclosure Statement to Debtor's Plan of Reorganization" on July 17, 2013, Hernandez voted to accept the Bankruptcy Plan of Reorganization ("the Plan") and elected Class 5A treatment.  Following a confirmation hearing, the bankruptcy court confirmed the Plan on August 29, 2013.

The Plan included the following relevant provisions:

1.7 "Claim" shall mean any Debt or other right to payment from the Debtor which has accrued as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can

2

be asserted by way of set-off.  Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

. . . .

1.15 "Debt" shall mean any obligation which is owed by the Debtor, alone, and any obligation of the Debtor and any other Person, to any Entity.

. . . .

11.5 The treatment of Claims under the Plan shall govern the rights of such holders. . . . The completion of payments under the Plan shall be in accord and satisfaction of any and all Claims treated under the Plan.  Once the Plan payments are completed, Claims asserted against the Debtor shall be deemed paid in full, including the release of rights to enforce or collect such Claims against non-debtor parties.  During the duration of the Plan, as long as the Reorganized Debtor is making its payments under the Plan, all holders of Claims against the Debtor are restrained and enjoined from (a) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, its agents or attorneys, its assets or third parties also liable for the payment of such Claim . . . .

. . . .

11.10 The Debtor, Reorganized Debtor, the officers and directors of the Debtor and the shareholders shall be discharged and released from any liability for Claims and Debts, except for obligations arising under this Plan. The exclusive remedy for payment of any Claim or Debt so long as the Plan is not in default shall be the Plan.

In accordance with the Plan, Hernandez received thirty percent of his claim for unpaid wages under the FLSA—$14,309.40—in two equal payments, with the final payment issued on February 18, 2014.

The district court administratively closed Hernandez's FLSA case without prejudice on September 13, 2013.  However, after Hernandez filed a motion to reopen on January 9, 2014, the district court lifted the stay as to Miller individually on February 11, 2014.  With Hernandez's FLSA case reopened as to Miller, Miller filed a motion for summary judgment.  He argued that the FLSA claim against him was discharged under the Plan and that, in the alternative, the doctrine of res judicata precluded Hernandez from

No. 15-10287

advancing the claim. Finding that the Plan and the Class 5A payments released Miller and "anyone else" from Hernandez's FLSA claim, the district court granted summary judgment in favor of Miller on December 2, 2014.[1] Hernandez subsequently filed a motion to reconsider under Federal Rule of Civil Procedure 59(e), arguing that bankruptcy courts lack the authority to discharge the debts of non-debtor third parties, such as Miller. The district court denied Hernandez's motion, explaining that his argument was an impermissible collateral attack on the judgment of the bankruptcy court. Hernandez timely appealed.

## II. STANDARD OF REVIEW

We review grants of summary judgment *de novo*, applying the same standard as the district court. *Cleveland v. City of Elmendorf*, 388 F.3d 522, 525–26 (5th Cir. 2004). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). "We construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (quoting *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005)).

## III. INTERPRETATION OF THE BANKRUPTCY PLAN

The determination of whether the district court properly granted summary judgment turns on the interpretation of the Plan, specifically whether the Plan releases Hernandez's FLSA claims against both LMRI *and* Miller. The plain language of the Plan is unambiguous in its release of Hernandez's FLSA claim against LMRI, and Hernandez explicitly agrees that his claim against LMRI was released. However, Hernandez argues that his

---

[1] Because the district court granted summary judgment on the release issue, the court declined to decide the res judicata issue.

No. 15-10287

FLSA claim against Miller was not released under the Plan.  As a threshold matter, we consider the nature of Hernandez's FLSA claim against Miller.[2]

Hernandez originally filed a claim for failure to pay overtime wages in violation of the FLSA against LMRI and Miller.  Under the FLSA, a plaintiff can recover unpaid wages from an employer, which the statute defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  As recognized by the Supreme Court, this definition is expansive and covers any employer, including a corporate officer, with "managerial responsibilities" and "substantial control of the terms and conditions of the [employer's] work."  *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)); *see also id.* at 972 ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983))).  Employers under the FLSA are jointly and severally liable for unpaid wages.  *Id.*; *see also* 2 Les A. Schneider & J. Larry Stine, *Wage and Hour Law* § 21:13 ("If FLSA violations are found, the defendant company/corporation and defendant individual may be jointly and severally liable, that is, each is responsible for the entire amount due . . . .").

Given that LMRI and Miller are jointly and severally liable for any FLSA violation that may have occurred, we next turn to whether the Plan releases Hernandez's FLSA claim against Miller in addition to his claim against LMRI.  Assuming, without deciding, that a bankruptcy reorganization plan can release claims such as the FLSA claim against Miller in this case, we must

---

[2] We note that, in determining the nature of Hernandez's FLSA claim against LMRI and Miller, we are not deciding whether any FLSA violation has actually occurred.   In this appeal, we consider only whether Hernandez's FLSA claim against Miller can proceed in the district court, and we do not reach the merits of that claim.

determine whether the Plan effectively released Hernandez's FLSA claim against Miller. When interpreting the provisions of bankruptcy reorganization plans, this court "regularly appl[ies] principles of contract interpretation to clarify the meaning of the language" in those plans. *Compton v. Anderson (In re MPF Holdings US LLC)*, 701 F.3d 449, 457 (5th Cir. 2012); s*ee also Official Creditors Comm. of Stratford of Tex., Inc. v. Stratford of Tex., Inc. (In re Stratford of Tex., Inc.)*, 635 F.2d 365, 368 (5th Cir. 1981) ("The confirmed arrangement, however, is tantamount to a judgment of the bankruptcy court. Nevertheless, the arrangement represents a kind of consent decree which has many attributes of a contract and should be construed basically as a contract." (citation omitted)). "Contract interpretation is a question of law, reviewed de novo." *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008). Under contract law, "[t]he language of the contract, unless ambiguous, represents the intention of the parties." *Kimbell Foods, Inc. v. Republic Nat'l Bank of Dall.*, 557 F.2d 491, 496 (5th Cir. 1977), *aff'd sub nom. United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979).

The district court applied principles of contract interpretation to determine the meaning of the Plan and concluded that "[t]he language of the Plan to which Hernandez agreed clearly releases anyone else from the claims asserted by claimants."[3] We disagree. Within the Bankruptcy Code, 11 U.S.C.

---

[3] We note that the Plan language may be somewhat ambiguous as to whether it releases Hernandez's FLSA claim against Miller. The Plan could be read to release all claims that could be brought against the Debtor and any other party who is jointly liable with the Debtor. However, as previously discussed, multiple employers who are liable for unpaid wages under the FLSA are jointly and severally liable for such wages. *See Donovan*, 747 F.2d at 972. Miller's liability on the FLSA claim is therefore independent of the liability of LMRI on that claim. Here, the Plan's release provisions could also be read as not releasing claims against an officer or third party for which the Debtor is severally liable. We do not need to determine whether the Plan is ambiguous as to whether it releases Hernandez's FLSA claim against Miller because we conclude that our case law requires more specificity than the Plan provides to release a claim against a non-debtor. *See Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood)*, 203 F.3d 914, 919 (5th Cir. 2000).

§ 524(e) provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1049 (5th Cir. 1987) (quoting 11 U.S.C. § 524(e)). However, we have previously explained that when a bankruptcy plan has been confirmed by the bankruptcy court and gone unchallenged on direct appeal, a "specific discharge or release" in such a plan can release claims against non-debtors.[4] *In re Applewood*, 203 F.3d at 919; *see also Shoaf,* 815 F.2d at 150. Accordingly, to determine whether the Plan releases Hernandez's FLSA claim against Miller, we must examine the specificity of the release provisions. A review of our precedent on specificity demonstrates that the provisions in the Plan are not sufficiently specific to release Hernandez's FLSA claim against Miller.

In *Shoaf*, we held that the bankruptcy court's confirmation of a "clear and unambiguous" reorganization plan that "expressly released" a third party from liability on a guaranty barred a subsequent action against that third party on the guaranty. 815 F.2d at 1047, 1050. In that case, "[t]he bankruptcy judge . . . entered an order confirming the [reorganization plan] expressly stating that [that plan] 'include[d] the release of any guarantees given to a creditor of the Debtor which guarantees arose out of the Debtor's business dealings with any creditor of the Debtor.'" *Id.* at 1049. This language was inserted into the plan at the behest of a guarantor who agreed to release $850,000 in life insurance proceeds to the debtor's estate. *Id.* at 1048. The

---

[4] Parties to a bankruptcy remain free to challenge the release of claims against a non-debtor in the bankruptcy court or on direct appeal. However, as the Supreme Court explained in *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152–54 (2009), once the time for objecting to, or directly appealing, a plan has passed, parties may not challenge particular provisions of a plan as exceeding the bankruptcy court's authority. Thus, in this appeal, we do not address whether confirmation of the Plan was beyond the authority of the bankruptcy court under 11 U.S.C. § 524(e); rather, we only interpret the provisions of the Plan as written in light of our precedent.

inclusion of this language was a condition of that guarantor's release of the proceeds, and the final plan included this language while omitting a paragraph that provided for a general release. *Id.* at 1049. Thus, we held that the language with respect to third-party guarantors was specific enough to discharge those guarantors of liability.

By contrast, in *In re Applewood*, we refused to enforce a release against a third-party guarantor in a later action because the plan at issue "contained no provision *specifically* releasing the personal guaranties of the [third party]." 203 F.3d at 919–20. "[W]e decline[d] to extend the holding of *Shoaf* to situations where a plan of reorganization does not contain a specific discharge of the indebtedness of a third-party." *Id*. at 920. The release language in *In re Applewood* included, in relevant part, the following:

> The provisions of the confirmed plan shall bind all creditors and parties in interest, whether or not they accept the plan and shall discharge the Debtor, its officers, shareholders and directors from all claims that arose prior to Confirmation.

*Id*. at 916. Distinguishing *Shoaf*, we noted that "[t]he approved final reorganization plan [in *Shoaf*] contained a specific paragraph for the release of Shoaf's guaranty." *Id*. at 919. Additionally and "[i]mportantly, the final reorganization plan confirmed by the bankruptcy court in *Shoaf* omitted a paragraph that provided for a general release, leaving the paragraph specifically releasing the Shoaf guaranty in the plan." *Id*. (footnote omitted). Because the provision in *In re Applewood* did not specifically release the guarantor, who was also an officer, from his personal guaranties, we allowed the creditor to proceed with his claim to recover from the guarantor. *Id*.

We applied the specificity test developed in *Shoaf* and *In re Applewood* in *FOM P.R. S.E. v. Dr. Barnes Eyecenter Inc.*, 255 F. App'x 909, 912 (5th Cir. 2007) (per curiam) (unpublished). In that case, FOM leased retail space to Debtor Dr. Barnes Eyecenter, Inc., ("DBEI"). Eyemart, an affiliate of DBEI,

unconditionally guaranteed DBEI's obligations under the lease. *FOM*, 255 F. App'x at 910. DBEI filed for Chapter 11 relief, and the reorganization plan approved by the bankruptcy court "included a release of claims against Eyemart, among others, in exchange for Eyemart's agreement to subordinate its claims to those of all other creditors." *Id.* The reorganization plan included in pertinent part:

> Any claims held by Debtor's insiders, including but not limited to Debtor's affiliate Eyemart Express, Ltd., shall be subordinated to the claims of all other creditors of DBEI's estate, and no distributions shall be made on account of same until all other claims are paid in full pursuant to this Plan. In return for the subordination of their claims, Debtor's insiders shall not have or incur any liability to any person for any claim, obligation, right, cause of action or liability, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to DBEI, its Bankruptcy Case, or the Plan; and all claims based upon or arising out of such actions or omissions shall be forever waived and released.

*Id.*

This court concluded that "the language in this case falls somewhere between *Shoaf* and [*In re Applewood*] with respect to the specificity of the release." *Id.* at 912. "[H]owever, several factors [led] us to conclude that the bankruptcy release does bar [FOM's] claims." *Id.* First, "the release of claims was an integral part of the bankruptcy order" just as it was in *Shoaf*. *Id.* We further noted that "the release of claims was not simply boilerplate language that was inserted into the [reorganization plan], but rather a necessary part of the [reorganization plan] itself." *Id.* "Second, the language in [*FOM*], while not as specific as in *Shoaf*, [was] more specific than that in [*In re Applewood*]," as the *FOM* language "explicitly mention[ed] Eyemart as an entity that benefit[ed] from the release." *Id.*

No. 15-10287

Applying the specificity test developed in our earlier cases to the release language in this case, we hold that the release provisions in the Plan are not specific enough to release Hernandez's FLSA claim against Miller.[5]  In *FOM*, this court held that the reorganization plan released claims against a guarantor that was mentioned by name in that plan.  *See FOM*, 255 F. App'x at 912 ("Here, [the plan] explicitly mentions Eyemart as an entity that benefits from the release.").  Conversely, in *In re Applewood*, we held that the boilerplate release language was not sufficiently specific to release claims against a third party.  203 F.3d at 919.  The release language in this case closely resembles the language of the plan in *In re Applewood*.  Miller is not identified by name in any of the release language, and, while Miller is an officer of LMRI, we held in *In re Applewood* that a party's status as an officer combined with boilerplate release language is not sufficiently specific.[6]  *Id.*

Moreover, nowhere does the Plan mention anything related to a FLSA claim or employment law violations more generally.  The language in the Plan is, if anything, generic.  In contrast, the language in *Shoaf* "include[d] the release of any guarantees given to any creditor of the debtor which guarantees arose out of the debtor's business dealings with any creditor of the debtor."  815 F.2d at 1054.  Thus, the plan in *Shoaf* was specific to the type of claims it was releasing—*i.e.*, guarantees that arose out of the debtor's business dealings with

---

[5] Although the Eleventh Circuit declined to adopt our specificity test, it aptly summarized the factors we consider in applying this test.  *Iberiabank v. Geisen* (*In re FFS Data*), 776 F.3d 1299, 1308–09 (11th Cir. 2015).   In particular, the second, third, and fourth factors described by the Eleventh Circuit— "whether the release identifies the released parties, whether the release identifies the released claims, and whether the release of those claims was an integral part of the bankruptcy order."—support our holding that the Plan's release language lacked sufficient specificity to release the FLSA claim against Miller.

[6] In fact, in all three of the relevant cases, we addressed whether a claim against a non-debtor party who was, to some extent, an insider to the bankruptcy plan was released.  In *In re Applewood*, the non-debtor was an officer of the bankruptcy company.  203 F.3d at 919.  In *Shoaf*, the non-debtor was a former officer of the company and a guarantor.  815 F.2d at 1047–48.  And in *FOM*, Eyemart was an affiliate of DBEI.  255 F. App'x at 910.

any creditor.  Lacking any language relating to FLSA claims, we cannot say that the Plan here was specific enough to release Hernandez's FLSA claim against Miller.[7]

Ultimately, the language in the Plan at issue here closely approximates the generic release language of the *In re Applewood* plan.  Because we held that the plan there was not specific enough to discharge a third party's liability, we cannot say that, in this case, the language of the Plan is sufficiently specific to release Hernandez's FLSA claim against Miller. Accordingly, we hold that Hernandez may proceed on his FLSA claim against Miller.

We next turn to whether the doctrine of res judicata bars Hernandez's FLSA suit against Miller, which Miller raised in the district court as an alternative ground for barring suit.  The district court held that the provisions of the Plan released Hernandez's FLSA claim against Miller and thus declined to analyze the res judicata effect of the bankruptcy court's confirmation of the Plan.  We typically do not address issues not first addressed by the district court.  However, as the Eleventh Circuit appropriately observed, in cases such as the one before us today, the res judicata inquiry and the interpretation of the reorganization plan are essentially one in the same.  *In re FFS Data,* 776 F.3d at 1307 ("[T]his case is not truly about res judicata, but, rather, the

---

[7] There is also no indication that the Millers undertook any obligations under the Plan with the expectation that any release language would be inserted into the Plan. *See In re FFS Data,* 776 F.3d at 1307 (applying this court's specificity test and explaining that the insertion of release language into a plan in return for a third party undertaking some obligation favors a finding that the release language is sufficiently specific).  In both *Shoaf* and *FOM*, the release language was inserted into the plans in consideration for something of value from a third party.  In *Shoaf*, a guarantor paid $850,000 into the bankruptcy estate in return for the insertion of language releasing claims on guarantees into the plan.  815 F.2d at 1049.  Similarly, in *FOM*, "Eyemart received the release in consideration for its agreement to subordinate its claims."  255 F. App'x at 912.  In this case, the Millers agreed to defer payment on personal loans made to LMRI and on deferred unpaid compensation until distributions to other unsecured creditors had been paid.  However, there is no indication that they did this with an expectation that any release language would be inserted into the Plan.

interpretation of the reorganization plan"). Accordingly, res judicata does not bar Hernandez from proceeding on his FLSA claim against Miller for the same reasons that the Plan is not sufficiently specific to discharge Miller's liability on Hernandez's FLSA claim.[8]

As a final matter, we note that Hernandez is not barred from proceeding against Miller simply because he has already received compensation from LMRI for the underlying FLSA violation. As we have explained, "discharge of a debt to the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." *Shoaf*, 815 F.2d at 1049 (citing 11 U.S.C. § 524(e)). Furthermore, the Ninth Circuit has explained, and we agree, that a company's bankruptcy has no effect on the ability of a plaintiff to bring a FLSA claim against an officer. *Boucher v. Shaw*, 572 F.3d 1087, 1093 (9th Cir. 2009) ("[O]ur case law regarding guarantors, sureties and other non-debtor parties who are liable for the debts of the debtor leaves no doubt about the answer: the [debtor's] bankruptcy has no effect on the claims against the individual managers at issue here.").

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

---

[8] In fact, *Shoaf*, 815 F.2d at 1051–54, *In re Applewood*, 203 F.3d at 919–20, and *FOM*, 255 F. App'x at 911–13, all involved the application of res judicata.