[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11473
_____

D.C. Docket Nos. 9:13-cv-80635-KMM; 09-bkc-38395-EPK

IN RE:  FFS DATA, INC.,

Debtor.

_____

IBERIABANK,

Plaintiff - Appellant,

versus

BRADFORD GEISEN,
FFS DATA, INC.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 23, 2015)

Before TJOFLAT, JILL PRYOR and COX, Circuit Judges.

JILL PRYOR, Circuit Judge:

This appeal concerns the proper interpretation of a release of claims in the bankruptcy reorganization plan of appellee FFS Data, Inc. ("FFS"). Appellant Iberiabank appeals the district court's decision affirming the bankruptcy court's order that Iberiabank's claims against appellee Bradford Geisen were released. After careful consideration of the briefs and record, and with the benefit of oral argument, we affirm.

## I.    FACTUAL BACKGROUND

In June 2007, Iberiabank's predecessor made a $10.6 million loan (the "Loan") to Siena Realty Associates, LLC ("Siena"). Mr. Geisen and FFS, among others, guaranteed the Loan, which was additional funding for a build out of the building FFS leased from Siena. Mr. Geisen, president and 100% shareholder of FFS, owned a 48% interest in Siena. The Loan was secured by a mortgage on real property owned by Siena. In December 2009, FFS filed for Chapter 11 bankruptcy protection. Shortly before FFS filed for bankruptcy, Siena was in default for nonpayment of the Loan. Based on FFS's guaranty, Iberiabank became a general unsecured creditor in FFS's bankruptcy. Iberiabank filed a claim in the bankruptcy proceeding for approximately $10.6 million, the full amount of the outstanding Loan guaranteed by FFS. FFS filed its original Chapter 11 plan of reorganization

2

on April 22, 2010.  On October 13, 2010, FFS circulated a draft amended reorganization plan.

The next day, Iberiabank entered into a forbearance agreement concerning the Loan with Siena, Mr. Geisen, and the other guarantors of the Loan.  Iberiabank agreed to forbear from exercising its remedies with respect to the Loan and the guaranties for 90 days to provide Siena and the guarantors an opportunity to sell the real property with the mortgage securing the Loan for approximately $5.4 million.  If the property sold, Iberiabank would be permitted to proceed with an action against the guarantors for any remaining deficiency.

Two days later, on October 16, 2010, FFS filed its amended reorganization plan (the "Plan") with the bankruptcy court.  To resolve their dispute over the amount of Iberiabank's claim, FFS and Iberiabank entered into a Settlement Agreement on November 12, 2010.  The Settlement Agreement provided Iberiabank with an allowed Class 6 general unsecured claim for $2 million.  The Settlement Agreement did not mention Iberiabank's claims against Mr. Geisen or Mr. Geisen's personal obligations.  The bankruptcy court approved the Settlement Agreement in December 2010.  Under the Plan, Mr. Geisen contributed $750,000 to the bankruptcy estate and agreed to release more than $1 million in unsecured claims held against the estate.  In addition, BG Funding, Inc., an entity Mr. Geisen owned in part, used a $1 million tax refund to purchase a secured claim against the

3

bankruptcy estate and then agreed to concessions on the secured claim, which

allowed the bankruptcy estate to provide payouts to some unsecured creditors.  In

return, the creditors agreed to a "general release of Bradford Geisen" in § 8.13 of

the Plan:

8.13   Discharge of Debtor and Insider

In exchange for releasing the Insider Claims[1] totaling $1,000,817.30, and providing the New Value Payment,[2] all holders of Claims agree to a general release of Bradford Geisen.

. . . [T]he rights afforded herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever . . . against the Debtor and Debtor In Possession, the Estate, any of the assets or properties under the Plan, or its officer and/or director, Bradford Geisen.  Except as otherwise provided herein, (i) on the Effective Date, all such claims against the Debtor and its officer and/or director, Bradford Geisen, and Equity Interest in the Debtor shall be satisfied, discharged, and released in full, and (ii) all persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, or its officer and/or director Bradford Geisen any other or further Claims or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date . . . .

Debtor's Am. Plan of Reorganization 30, *In re FFS Data, Inc.*, No. 09-38395

(Bankr. S.D. Fla. Oct. 16, 2010), ECF No. 243.

---

[1] "Insider Claims" refers to various unsecured claims, held by Mr. Geisen and two other related entities, which Mr. Geisen released.  Debtor's Am. Plan of Reorganization 8.

[2] The "New Value Payment" refers to the $750,000 that Mr. Geisen contributed to the bankruptcy estate.  *Id.* at 9.

Section 8.15 of the Plan released a narrower set of claims relating to the Debtor, bankruptcy, or Plan against the Released Parties,[3] which included the Debtor and related persons and affiliates:

8.15   Release by Holders of Impaired Claims

This Plan . . . is a full and final settlement compromise of all the Claims and causes of action . . .  that the Debtor holders of Claims against the Debtor and Equity Interest in the Debtor may have against any of the Released Parties pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019.  In consideration of the obligations of the Debtor and the Reorganized Debtor under this Plan . . . and Bradford Geisen's agreement to release the Insider Claims totaling $1,000,817.30, and providing the New Value Payment, the Debtor and each holder of a Claim against or Equity Interest in the Debtor shall be deemed to forever release, waive, and discharge all Claims . . . against the Released Parties . . . in any way relating to the Debtor, the Chapter 11 case or the conduct thereof, of this Plan.

*Id.* at 31 (emphasis omitted).

Iberiabank did not attend the confirmation hearing or object to the Plan.  On March 21, 2011, the bankruptcy court entered an order confirming the Plan.  No party appealed the confirmation order.

In July 2012, Iberiabank commenced collection efforts in state court against the Loan's six individual guarantors, including Mr. Geisen, because a deficiency remained when the collateral securing the Loan was sold.  Mr. Geisen responded

---

[3] "Released Parties" includes "the Debtor and each of its respective current and former directors, officers, employees, representatives, members, affiliates, agents, counsel, financial advisors, and professionals."  *Id.* at 10.

5

that the Plan released him from his personal guaranty of the Loan.  On March 29, 2013, Iberiabank reopened the bankruptcy case and moved for a determination that its claims against Mr. Geisen were not released.  After a hearing, the bankruptcy court denied Iberiabank's motion.  The bankruptcy court held that "every creditor of FFS was, in effect, giving a general release to Bradford Geisen, who is the debtor's principal."  Tr. of Mar. 18, 2013 Hr'g 32, *In re FFS*, ECF No. 871.  Sitting as an appellate court, the district court affirmed the bankruptcy court's decision.  Iberiabank now appeals to this Court.

## II.    STANDARD OF REVIEW

When reviewing an order of the district court entered in its role as an appellate court reviewing the bankruptcy court's decision, this Court independently examines the factual and legal determinations of the bankruptcy court, applying the same standards of review as the district court.  *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 698 (11th Cir. 2005).  Generally, we review *de novo* any determinations of law, whether by the bankruptcy court or district court, and review the bankruptcy court's factual findings for clear error.  *Id.*  When reviewing a bankruptcy court's interpretation of its own order, however, "our reluctan[ce] to disturb a bankruptcy court's judgment in this context is akin to the reluctance we exhibit when exercising abuse of discretion review.  *Finova Capital Corp. v. Larson Pharmacy Inc.* (*In re Optical Techs., Inc.*), 425 F.3d 1294,

6

1300 (11th Cir. 2005) (internal quotation marks omitted).  Unless it clearly abused its discretion, "a bankruptcy court's interpretation of its own order is entitled to substantial deference."  *Id.* at 1302-03.

### III.    DISCUSSION

Iberiabank presents two interrelated issues on appeal.  First, Iberiabank argues that the release of Mr. Geisen under § 8.13 of the Plan does not extend to its claim against Mr. Geisen based on his personal guaranty.  Second, Iberiabank argues that the confirmation order should not be afforded res judicata effect because, under a line of Fifth Circuit cases, the release in § 8.13 is not sufficiently specific.  We begin by addressing Iberiabank's argument that the Plan did not release Mr. Geisen from his obligations under the guaranty.

### A.

The Court follows principles of contract interpretation to interpret a confirmed plan of reorganization.  *See Official Creditors Comm. v. Stratford of Tex., Inc.* (*In re Stratford of Tex., Inc.*), 635 F.2d 365, 368 (5th Cir. Jan. 1981).[4]  "[T]he plain meaning of a contract's language governs its interpretation" under general contract principles.  *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326,

---

[4] This Court adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

1330 (11th Cir. 2011).[5]  "A contract term is ambiguous if 'reasonably susceptible to more than one interpretation.'"  *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1360 (11th Cir. 1988) (quoting *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir. 1982)).  An interpretation giving "reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (citing *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1338 (11th Cir. 1997)).

The first sentence of § 8.13 of the Plan states that "all holders of Claims agree to a general release of Bradford Geisen."  Debtor's Am. Plan of Reorganization 30.  Section 8.13 goes on to provide that "all such claims," that is, "Claims and Equity Interests of any nature whatsoever . . . against the Debtor and its officer and/or director, Bradford Geisen[,] . . . shall be satisfied, discharged, and released in full . . . ." *Id.*  It further states that "all Persons shall be precluded and enjoined from asserting" against the Debtor or Mr. Geisen any claims "based upon any act or omission, transaction or other activity . . . that occurred prior to the

---

[5] Mr. Geisen argues (and the district court decided) that in interpreting confirmed plans, courts should apply state law contract principles. Although this Court has not previously held that state law contract principles apply, we need not decide whether to apply state law contract principles or federal common law principles because they do not conflict here. *See, e.g.*, *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) ("In interpreting a contract under Florida law, we give effect to the plain language of contracts when that language is clear and unambiguous.") (internal quotation marks omitted).

Confirmation Date." *Id.* The plain language of § 8.13 thus unambiguously provides a "general release" of Mr. Geisen for "all . . . claims" by "all Persons" based upon any event prior to the Plan's confirmation. *Id.* Our inquiry should end here. *See Slater*, 634 F.3d at 1330.

Nonetheless, Iberiabank argues that the phrase "its officer and/or director" means that the release is limited to claims brought against Mr. Geisen in his capacity as an officer and/or director of FFS. Iberiabank further contends that construing § 8.13 as a general release renders this phrase meaningless.

Reading § 8.13 as a release only of claims against Mr. Geisen in his capacity as an officer and/or director of FFS is improper for two reasons. First, such an interpretation conflicts with the plain "general release" of "all . . . claims" language. Construing § 8.13 as something less than a "general release," as Iberiabank urges, renders this language, particularly the first sentence of § 8.13, meaningless.[6] The first sentence further explains that the consideration for the general release is Mr. Geisen's release of Insider Claims worth over $1 million and his $750,000 New Value Payment to the estate. Debtor's Am. Plan of Reorganization 30. Nothing in that first sentence or paragraph suggests that all

---

[6] Because we find § 8.13 to be clear and unambiguous, we do not consider extrinsic evidence to determine its meaning. *See Hashwani v. Barbar*, 822 F.2d 1038, 1040 (11th Cir. 1987) ("[T]he introduction of parol or extrinsic evidence to aid in the interpretation of a contract is prohibited, unless the contract is ambiguous."); *Uranksy v. First Fed. Savings & Loan Assoc.*, 684 F.2d 750 (11th Cir. 1982).

claim holders agreed to release Mr. Geisen only for claims against him in his capacity as an officer or director of FFS.  The "officer and/or director" phrase, which appears in a separate, subsequent paragraph of § 8.13, also does not contain any limiting language or reference to claims against Mr. Geisen solely in his capacity as an officer/director of FFS.  To the contrary, § 8.13 refers to "all" claims "of any nature whatsoever."  *Id.*  Moreover, the underlining of the phrase does not change its meaning.  It merely draws attention to the fact that Mr. Geisen, the individual being released, is an insider with respect to FFS.  We agree with the district court and the bankruptcy court that the phrase "its officer and/or director" should be read as "merely descriptive of Geisen's role at FFS."  *Iberiabank v. Geisen*, No. 13-cv-80635-KMM, slip op. at 6 (S.D. Fla. Mar. 4, 2014).

Second, if the release were read as limited to claims against Mr. Geisen solely in his capacity as an "officer and/or director" of FFS, § 8.15 would cover such claims, rendering § 8.13 superfluous.  Section 8.15 releases a broader group of parties related to FFS for a narrower class of claims—claims relating to FFS, the bankruptcy case, or the Plan.  Section 8.15 defines "Released Parties" as "the Debtor and each of its respective current and former directors, officers, employees, representatives, members, affiliates, agents, counsel, financial advisors, and professionals."  Debtor's Am. Plan of Reorganization 10.  Section 8.15 necessarily encompasses claims against Mr. Geisen in his official capacity because he is the

10

Debtor's "former officer [or] director," and such claims necessarily would "relat[e] to the Debtor . . . ." *Id.* at 31.  Section 8.13 therefore becomes "useless or inexplicable" if read so as to release only claims against Mr. Geisen in his capacity as "officer and/or director" of FFS.  *See Princess Cruise Lines*, 657 F.3d at 1218.

Our interpretation of § 8.13 as a general release of all claims against Mr. Geisen is preferred because "a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995); *see Restatement (Second) of Contracts* § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").  Because the released claims in § 8.13 are not limited to claims relating to FFS, the bankruptcy, or the Plan, § 8.13 is not redundant of § 8.15.  To give effect to all of the terms in these sections of the Plan, we conclude that § 8.13 is a general release of all claims against Mr. Geisen, which include claims arising out of his personal guaranty of the Loan.

B.

Iberiabank next urges us to follow cases from the Fifth Circuit to conclude that the release in § 8.13 is not sufficiently specific to have res judicata effect. First, we examine the Supreme Court's and our own precedent regarding the res

11

judicata effect of bankruptcy orders, and then we examine the line of Fifth Circuit cases Iberiabank suggests we adopt.[7]

Res judicata bars litigation of claims that were or could have been raised in a prior action. *Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc.* (*In re Piper Aircraft*), 244 F.3d 1289, 1296 (11th Cir. 2001). For res judicata to apply, "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same cause of action." *Id.* A bankruptcy court's confirmation order that is final and no longer subject to appeal becomes "res judicata to the parties and those in privity with them." *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152 (2009) (quotation omitted); *In re Optical*, 425 F.3d at 1300-02. Confirmation orders that satisfy the requirements for res judicata are given preclusive effect. *See Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II, Ltd.*), 898 F.2d 1544, 1549-50 (11th Cir. 1990); *see also In re Optical*, 425 F.3d at 1300-01. A reorganization plan that is

---

[7] FFS and Mr. Geisen contend that Iberiabank's res judicata argument is waived because Iberiabank did not raise it before the district court or bankruptcy court. The Federal Rules of Bankruptcy Procedure require a party appealing a bankruptcy court ruling to serve a statement of the issues to be presented on appeal. Fed. R. Bankr. P. 8006. "An issue that is not listed pursuant to this rule and is not inferable from the issues that are listed is deemed waived and will not be considered on appeal." *Snap-On Tools, Inc. v. Freeman* (*In re Freeman*), 956 F.2d 252, 255 (11th Cir. 1992) (internal quotation marks omitted). While Iberiabank uses the term res judicata for the first time in its briefing in this Court, the substance of the issue is clearly inferable from Iberiabank's arguments below, which rely upon the same cases.

incorporated into a confirmation order has the same res judicata effect.  *See id.* at 1300.

In *Travelers Indemnity Co. v. Bailey*, the Supreme Court recognized the finality of bankruptcy court orders and their res judicata effect, holding that they cannot be collaterally attacked.  557 U.S. at 137.  The Court examined the res judicata effect of a complex reorganization plan that provided payment to holders of asbestos-related claims.  *Id.* at 140.  The "cornerstone" settlement of the reorganization plan provided that insurers paid $770 million to the bankruptcy estate, $80 million of which came from the petitioner, Travelers Insurance.  *Id.* at 141.  In return for this payment, the creditors released the insurers "from any and all Policy Claims," settlement terms that were incorporated into a 1986 order confirming the reorganization plan.  *Id.* at 141-42.  When plaintiffs began bringing asbestos-related actions against Travelers a decade later, Travelers asked the bankruptcy court to enjoin the lawsuits based on the release in the 1986 order.  *Id.* at 143.  Because the order "became final on direct review," the Supreme Court held it was "res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."  *Id.* at 152 (internal quotation marks omitted).

13

Similarly, in *In re Optical*, this Court held that a third-party lessee was barred from collaterally attacking a bankruptcy confirmation order. 425 F.3d at 1294. The Chapter 11 debtor-lessor leased kiosks to the third-party lessees and assigned those leases to finance companies. *Id.* at 1297-98. The third-party lessees argued that the confirmation order impermissibly modified their leases with the finance companies. *Id.* at 1300. This Court found the terms in the confirmation order to be "plain on their face" and thus enforced the order. *Id.* at 1304. We explained that challenges to the bankruptcy court's jurisdiction "could have been raised by appellants at the time of confirmation," but were not; thus, the confirmation order had res judicata effect. *Id.*

Iberiabank attempts to distinguish *Bailey* and *In re Optical* on the ground that Iberiabank does not contend the bankruptcy court lacked subject matter jurisdiction to enter the order releasing Mr. Geisen's guaranty. Even assuming Iberibank is not challenging whether the bankruptcy court had subject matter jurisdiction, the res judicata analysis of *Bailey* and *In re Optical* still controls. In *Bailey*, the Supreme Court rejected an argument that a less stringent res judicata standard applied when there was a collateral attack challenging the bankruptcy court's subject matter jurisdiction. *See Bailey*, 557 U.S. at 152 (explaining the bankruptcy court's order was not "less preclusive because the attack is on the Bankruptcy Court's conformity with its subject-matter jurisdiction"). However,

14

neither *Bailey* nor *In re Optical* supports Iberiabank's argument that a less stringent res judicata analysis applies when a party on collateral attack raises an issue other than subject matter jurisdiction. Instead, if the four requirements of res judicata are met here, res judicata bars us from taking any action beyond the interpretation of the confirmation order's terms. As discussed above, we conclude that under principles of contract interpretation, the confirmed Plan contained a "general release" that released claims based on Mr. Geisen's guaranty of the Loan. Thus, as in *In re Optical*, this case is not truly about res judicata, but, rather, the interpretation of a reorganization plan. 425 F.3d at 1301. Because Iberiabank challenges the res judicata effect of the confirmation order based on the fourth prong of the res judicata test, however, we next must consider whether the claims at issue involve the same cause of action covered by the confirmation order.

This Court has previously explained that "[c]laims are part of the same cause of action when they arise out of the same transaction or series of transactions." *In re Justice Oaks II*, 898 F.2d at 1551. The bankruptcy court's confirmation order and Iberiabank's suit on the guaranty arise out of the same series of transactions related to the Loan. Iberiabank was a creditor in the bankruptcy case because its predecessor made the Loan to Siena, and, as a result of Siena's default, Iberiabank had an unsecured claim against the Debtor, FFS, as guarantor. In the guaranty suit, Iberiabank sued the guarantors of the Loan other than FFS. The confirmed Plan

15

resolved Iberiabank's claims against FFS and, as we have concluded, released Mr.

Geisen from his guaranty on the Loan.  Although Iberiabank claims that Mr.

Geisen's guaranty was never discussed as part of the bankruptcy, the FFS guaranty

was at issue in the bankruptcy, and the two guaranties applied to the same

underlying Loan.  Additionally, FFS, Mr. Geisen, and Siena were all closely

related.[8]  There is little question, then, that the suit against Mr. Geisen based on the

guaranty claim meets the same transaction requirement.

In a final attempt to avoid the res judicata effect of the release in the

confirmation order, Iberiabank urges this Court to adopt a test from the Fifth

Circuit.  In three cases decided prior to *Bailey*, the Fifth Circuit applied an

additional factor to the res judicata analysis in cases interpreting bankruptcy

confirmation plans that release third-party guarantors.  In this narrow class of

cases, the Fifth Circuit held that bankruptcy orders are entitled to res judicata effect

only if the release of the third-party guarantor is "sufficiently specific."  *FOM P.R.

S.E. v. Dr. Barnes Eyecenter Inc.*, 255 F. App'x 909, 911, 912 (5th Cir. 2007).  In

*Republic Supply Co. v. Shoaf*, the Fifth Circuit held that a confirmed reorganization

plan expressly providing for the release of a third-party guarantor had a res judicata

effect.  815 F.2d 1046, 1053 (5th Cir. 1987).  The Fifth Circuit examined the

language of the release in the confirmed plan, which released all claims against a

---

[8] As noted above, Siena was FFS's landlord; Mr. Geisen was president and 100% shareholder of FFS and 48% owner of Siena.

16

group of guarantors but was not a general release. *Id.* at 1048. The Fifth Circuit concluded that the claims arose out of the same transaction because the confirmation order included a release extinguishing the claim against the guarantor that was the subject of the appeal. *Id.* at 1053-54.

In *In re Applewood Chair Co.*, the Fifth Circuit applied *Shoaf*, holding that "the *res judicata* effect of an approved reorganization plan" depended on the substance of the release. *Applewood Chair Co. v. Three Rivers Planning & Dev. Dist.* (*In re Applewood Chair Co.*), 203 F.3d 914, 918 (5th Cir. 2000). Without discussing whether the release in the plan and the suit on the guaranty involved the same cause of action or arose out of the same transaction, the Fifth Circuit held that res judicata did not apply because the release was not specific enough to release the personal guaranties of the company president and his wife, who was a shareholder of the debtor. *Id.* at 919. The court held that a release of the personal guaranties was not "enumerated or approved by the bankruptcy court." *Id.*

In the third case, the Fifth Circuit determined that the release of the third-party guarantor fell somewhere between the releases in *Shoaf* and *Applewood* but was sufficiently specific to have a res judicata effect. *FOM*, 255 F. App'x at 909. The Fifth Circuit held the release to be sufficiently specific because it was an integral and necessary part of the bankruptcy plan itself, rather than "simply

17

boilerplate language." *Id.* at 912. The release also specifically identified the released party and the claims to be released. *Id.*

We decline to adopt the test from the Fifth Circuit, a test that was articulated in cases decided prior to the Supreme Court's opinion in *Bailey*. In *Bailey*, the Supreme Court held that allowing collateral attacks on a bankruptcy court's order "cannot be squared with res judicata and the practical necessity served by that rule." 557 U.S. at 145. And, as this Court has stated, creditors cannot later "raise objections to the actual terms of the [reorganization plan] or the confirmation order, as these were deemed waived when they failed to object to the confirmation." *In re Optical*, 425 F.3d at 1301.

Even if we were to apply the Fifth Circuit's test, however, we would conclude that the release was sufficiently specific to release Mr. Geisen. To determine whether a release of a third-party guarantor is sufficiently specific, the Fifth Circuit considers factors including whether the creditor would have known he was releasing the third-party guarantor, whether the release identifies the released parties, whether the release identifies the released claims, and whether the release of those claims was an integral part of the bankruptcy order. *See FOM*, 255 F. App'x at 912; *Applewood*, 203 F.3d at 919; *Shoaf*, 815 F.2d at 1050.

Here, the release clearly identifies Mr. Geisen, stating that "all holders of Claims agree to a general release of Bradford Geisen." Debtor's Am. Plan of

18

Reorganization 30. The release states that it is a "general release" of "all . . . claims" of "any nature whatsoever," which certainly would encompass the guaranty. *Id.* Iberiabank argues that the release is not specific enough because it does not expressly reference the guaranty. In *FOM*, however, the Fifth Circuit held that a release of "all claims" need not specify that it is releasing a guaranty. *FOM*, 255 F. App'x at 912. The release of Mr. Geisen's guaranty was also an integral part of the bankruptcy order and the Plan because Mr. Geisen received the release as consideration for his release of over $1 million in claims held against the debtor and his personal contribution of $750,000 to the bankruptcy estate. Although Iberiabank argues that the dollar value of the consideration it received was minimal, Mr. Geisen unquestionably provided value to the estate and the creditors. The release was therefore an integral part of the Plan, regardless of the value of the consideration to any individual creditor.

IV.

For the foregoing reasons, we affirm the district court's judgment.

**AFFIRMED.**