[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14539
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-03904-WSD

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff - Appellee,

AL B. HILL,

Interested Party - Appellee,

versus

JAMES A. TORCHIA, et al.,

Defendants,

E. LYNN SCHOENMANN,
Bankruptcy Trustee of the Estate of Synergy Acceptance Corporation,

Movant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____
(April 4, 2018)

Before MARTIN, JILL PRYOR, and NEWSOM, Circuit Judges.

PER CURIAM:

This appeal arises from an enforcement action brought by the Securities and Exchange Commission against James A. Torchia and several of his businesses. Upon the commencement of the enforcement action, the district court appointed Appellee Al B. Hill as receiver for the assets of Torchia and his businesses. When Hill began distributing those assets, Appellant E. Lynn Schoenmann, the bankruptcy trustee for the estate of Synergy Acceptance Corporation, filed a claim seeking $10 million from the receivership entities. Hill filed a motion to disallow Schoenmann's claim on the ground that she had not proven that any of the receivership entities had ever received $10 million from Synergy. The district court granted Hill's motion. Schoenmann argues on appeal that the district court erred in disallowing her claims. We affirm.

**I**

In 2015, the SEC brought an enforcement action against James A. Torchia and several of his businesses—Credit Nation Capital, LLC; Credit Nation Acceptance, LLC; Credit Nation Auto Sales, LLC; American Motor Credit, LLC; and Spaghetti Junction, LLC. The complaint alleged that Torchia and his businesses had engaged in an ongoing fraud and Ponzi scheme in violation of numerous securities laws, which had left the businesses in a state of "massive

2

insolvency." In particular, the complaint alleged that Torchia, through his businesses, had raised tens of millions of dollars from investors who were promised significant returns. In reality, Torchia's businesses were experiencing multi-million dollar per year operating losses, which were never disclosed to investors. The complaint further alleged that Torchia had misappropriated the businesses' funds to himself, his family members, and other businesses.

When the SEC filed its complaint, it also filed an emergency motion requesting, among other things, that the district court freeze the defendants' assets and appoint a receiver to take control of those assets. The SEC argued that an asset freeze was necessary because of "Torchia's history of misappropriating funds and the [businesses'] massive ongoing operating losses." It further asserted that a receiver was necessary to "unravel the complicated knot" that Torchia had made of his companies' records.

The court granted the SEC's motion, froze the defendants' assets, and appointed Al B. Hill as receiver. Hill was given "immediate exclusive jurisdiction and possession" of all the assets and property of the defendants. Hill then began attempting to locate the defendants' assets and determine their value. He also began locating and contacting the defendants' creditors.

Hill eventually devised a proposed claims process and plan for distribution of the "collected assets of the receivership estate of Credit Nation Capital, LLC to

the investors and creditors of [that entity] and its affiliated entities." The total amount of the proposed distribution was $6 million. The plan proposed to distribute only the assets of the companies in receivership; it did not purport to distribute Torchia's personal assets. In April 2017, Hill filed a motion to approve that claims process and distribution plan. In response, the district court ordered that any creditor seeking to participate in the distribution must file a proof of claim form by June 1, 2017.

One of those creditors is E. Lynn Schoenmann, the Trustee of the bankruptcy estate of Synergy Acceptance Corporation, another of Torchia's businesses. Before June 2007, Synergy's majority shareholder was an entity called the Clear Skies Holding Company, whose majority owner and managing member was Torchia. On June 30, 2007, Synergy entered into a series of agreements with Clear Skies. The agreements provided, among other things, that Synergy would pay $5,096,940 to Clear Skies within five days of the execution of the agreement. It is undisputed that Synergy paid that amount to Clear Skies in July 2007. In exchange, Clear Skies pledged to Synergy 999,400 shares of Synergy's own stock. The agreements further provided for the forgiveness of about $5 million in debts owed to Synergy by Torchia and some of his other businesses.

Synergy filed for bankruptcy in 2011 in the Northern District of California, and Schoenmann was appointed as trustee. In 2012, Schoenmann brought an

4

adversary proceeding in the bankruptcy court against Torchia, Clear Skies, and various other entities controlled by Torchia seeking to recover the $5 million transfer and $5 million in forgiven debts described above on the ground that they were fraudulent.  In essence, Schoenmann argued that the transfer and write-offs were fraudulent because Synergy was insolvent at the time, and thus, the stock it received as part of the transaction was worthless.  At the summary judgment stage, the bankruptcy court concluded that "genuine issues of material fact exist with respect to whether [Synergy] received reasonably equivalent value for [the] July 2007 Payment and the Write-Offs."[1]

Upon receiving notice of Hill's plan to distribute the assets of the receivership entities, Schoenmann completed a proof-of-claim form, which she submitted on May 30, 2017.  The form states that it "is for use by investors and creditors of Credit Nation Capital, LLC ('Credit Nation') and its affiliated entities and predecessors, including Credit Nation Lending Services, LLC, Credit Nation Auto Sales, LLC, and America Motor Credit, LLC."  Schoenmann indicated on the form that she sought to recover the July 2007 payment of $5,096,940 from Synergy to Clear Skies.  As the basis for that claim, Schoenmann asserted that she "is entitled to damages" for "breach of fiduciary duty by Torchia in causing [Synergy]

---

[1] In his motion to disallow Schoenmann's claim, Hill stated that before the receivership at issue here commenced, Synergy agreed to settle its $10 million claim against Torchia and his businesses for $55,000.  Hill also stated that he has not remitted any amount toward that settlement, and that the adversary proceeding has been stayed as to Torchia and his businesses.

5

to buy back its own valueless stock at a time when it was insolvent." Schoenmann sought to recover an additional $5,226,016, which represented "the value of fraudulent transfers to Torchia, Synergy Motor/Auto Sales, National Viatical and Dun Right Automotive by reason of the Write-Offs of debts owed by these entities to [Synergy] for no consideration." Specifically, she claimed that the following write-offs had occurred: $93,177 to Torchia; $130,000 to National Viatical; $545,216 to Dun Right Automotive; and $4,457,623 to Synergy Motor Company. In all, Schoenmann sought to receive $10,322,956 from the receivership entities' assets.

On June 30, 2017, Hill filed a motion to disallow several claims, including Schoenmann's. He asserted that Schoenmann "has provided no evidence" that Credit Nation Capital or its affiliates "were the recipients of any portion of the July 2007 payment [or] the beneficiary of the Write-Offs." He explained that Credit Nation Capital, Credit Nation Auto Sales, and Credit Nation Lending Services "were all created in July 2008 and did not start operating until January 2009" and that because "[t]hey were not in existence at the time of the alleged transfer … they could not have received the money at issue." He argued that "[t]he lack of proof tying [the Credit Nation entities] to any portion of the $10 million is fatal to Synergy's claim."

6

Schoenmann filed an opposition to Hill's motion to disallow her claim. According to Schoenmann, "Torchia (and/or one or more of the entities he controlled) received" the $5 million payment and the $5 million in write-offs, and "[t]hat is all that is required for [Schoenmann] to be entitled to these funds." Schoenmann also pointed to Torchia's testimony during a hearing on the SEC's motion for a preliminary injunction as evidence that the Credit Nation entities received money from the Clear Skies transaction. Specifically, Torchia testified there that he took the money he received from Synergy's transaction with Clear Skies and invested it in some of his other businesses, one of which may have been Credit Nation Capital.

In August 2017, the district court entered an order granting Hill's motion to disallow Schoenmann's claim. The court found that Hill, as the receiver, "is in the best position to understand and examine the flow of funds between and amongst Torchia and the Receivership Entities." The court observed that "[t]he only evidence that funds from the Clear Skies … transaction flowed to Credit Nation is Mr. Torchia's statement that he used sales proceeds from Synergy to fund Credit Nation." The court explained, however, that it had previously found that Torchia's testimony was not credible. The court concluded that "[i]n the absence of any credible evidence that funds from the Clear Skies … transaction flowed to Credit Nation, the Receiver's Motion to Disallow Synergy's claim is granted."

7

In that same order, the court granted Hill's motion to approve the distribution plan for the initial $6 million of the receivership entities' assets. On December 12, 2017, the court granted Hill's motion for a second distribution of $3.5 million. Hill's latest quarterly status report, filed on January 29, 2018, indicated that to date, Hill has distributed approximately $9.5 million of the receivership entities' assets. The report also indicated that the receivership entities have approximately $2.4 million in assets that have not yet been distributed.

## II

Schoenmann has appealed the district court's order granting Hill's motion to disallow her claim against Credit Nation Capital and its affiliated entities, including Credit Nation Lending Services, Credit Nation Auto Sales, and American Motor Credit. The parties agree that we should review the district court's order in the same way we would review a bankruptcy court's denial of a proof of claim. *See* Br. of Appellant at 10; Br. of Appellee at 4. In a bankruptcy case, a claim is "deemed allowed" unless an interested party objects. 11 U.S.C. § 502(a). Once an objection is made, however, the bankruptcy court is required to determine whether the proof offered in support of the claim is sufficient to establish the validity of the claim. *See Gardner v. State of New Jersey*, 329 U.S. 565, 573 (1947). The creditor seeking to recover from a debtor bears the "ultimate burden of persuasion to establish the validity and amount of the claim by a

preponderance of the evidence." *In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007).   On appeal, we review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error.  *In re FFS Data, Inc.*, 776 F.3d 1299, 1303 (11th Cir. 2015).

Using the bankruptcy claims process analogy, Schoenmann, as the claimant, bears the ultimate burden of proving that she is entitled to participate in the distribution of Credit Nation Capital's assets.  We agree with the district court that Schoenmann has not proven her claim.

## A

Schoenmann first asserts that she is entitled to recover "a payment of $5,096,940 from [Synergy] to Torchia and Torchia-controlled entities."  Br. of Appellant at 11.  There is no dispute that in July 2007, Synergy paid $5,096,940 to Clear Skies, whose majority owner and managing member was Torchia.  The problem for Schoenmann is that there is no paper trail showing what Clear Skies did with the money, and thus no record showing that the entities she filed a claim against (Credit Nation Capital, Credit Nation Lending Services, Credit Nation Auto Sales, and American Motor Credit) ever received any part of this payment. On appeal, Schoenmann has asserted two main arguments, which we will discuss in turn.

**1**

Schoenmann first argues that it doesn't matter what happened to the money after it went to Clear Skies because Torchia and his businesses "are all one and the same for purposes of this case." Br. of Appellant at 14. That is incorrect. There is little doubt that Schoenmann has a claim against Torchia personally.[2] Importantly, though, Hill has not sought to distribute any of Torchia's personal assets at this time. Instead, as the claim form indicates, he is distributing the assets of Credit Nation Capital to the investors and creditors of that entity and "its affiliated entities and predecessors," including Credit Nation Lending Services, Credit Nation Auto Sales, and American Motor Credit.

In asserting that Torchia and all of his businesses are "one and the same," Schoenmann is essentially asking this Court to engage in what is sometimes called "reverse veil piercing," in which a corporation is held liable for the debts of a principal. *See, e.g., In re Geer*, 522 B.R. 365, 392–93 (Bankr. N.D. Ga. 2014). The availability of that remedy is determined by applicable state law, *id.* at 392, and often involves the balancing of a number of factors, *see, e.g., Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 297–98 (E.D.N.Y. 2014). But Schoenmann has never asserted—much less proven—that reverse veil piercing

---

[2] *See* Br. of Appellee at 16 (acknowledging that "[i]t appears undisputed that Schoenmann has a claim against Mr. Torchia"); *id.* at 16–17 ("If and when the Receiver locates and seeks to distribute Mr. Torchia's assets, Schoenmann's claim would be duly considered.").

is an appropriate remedy under the applicable state law. Nor would it make sense for her to do so, because Synergy was also one of Torchia's businesses. If all of Torchia's businesses are equally liable for his wrongs—as Schoenmann seems to argue—then presumably Synergy should also share in that loss, rather than gain a $10 million windfall at the expense of the innocent investors and creditors of Torchia's businesses.

In sum, Schoenmann's assertion that the Credit Nation entities whose assets are being distributed are liable to Synergy for Torchia's wrongs simply because they are associated with Torchia is not enough to allow this Court to disregard corporate formalities and allow her claims against the Credit Nation entities.

**2**

Schoenmann also asserts that Torchia's testimony showed that the money from the Clear Skies transaction flowed into the Credit Nation entities whose assets are being distributed, and that the district court clearly erred in finding that his testimony was not credible. We disagree.

During a hearing on the SEC's motion for a preliminary injunction, asset freeze, and appointment of a receiver, Torchia testified about his management of the various entities he controlled. When asked the source of Credit Nation Capital's initial funding, Torchia testified, "me." Br. of Appellant at 20 (quoting transcript of testimony). When asked "what [he] mean[t] by that," he testified,

11

"Well, in 2003 I started a finance company called Synergy Acceptance Corp. …

And then in 2008, I sold the company for 19 million dollars." *Id.* He also testified

that he "netted about ten million dollars on the deal." *Id.* at 21. When asked what

he did with that money, he stated:

> At the time, it was 2008, and I still had some employees on the –
> Synergy grew to 70 employees, and I still had some employees on the
> viatical side – at that point in time, it was National Viatical – and I
> still had some 20 employees at the dealerships. So I infused millions
> of dollars of capital into those companies, kept people in jobs. I am
> still doing that.

*Id.* In granting Hill's motion to disallow Schoenmann's claim, the district court

explained that it had previously found that Torchia's testimony during that hearing

was not credible. Specifically, the court found that "his opinions were not

supported by facts and were based on broad, speculative generalizations," and

many of his statements were, in the court's opinion, "untrue."

In her brief to this Court, Schoenmann argues that the district court clearly

erred in finding Torchia's testimony not credible because "[r]egardless of his lack

of candor and veracity on a host of other issues, Torchia would have no reason to

prevaricate on this one." *Id.* at 22. We reject that assertion. Torchia gave the

testimony quoted above in a hearing about whether to shut down his businesses

and give control of them to a receiver. We agree with Hill that Torchia would have

had ample reason to overstate the financial well-being and funding of his

12

businesses during that hearing.  In any event, the district court did not clearly err in finding that Torchia's testimony was not credible.

Moreover, even if Torchia's testimony had been credible, it still doesn't necessarily support Schoenmann's claim.  As the district court recognized, Torchia's testimony was based on "broad, speculative generalizations."  His muddled testimony indicating that he "infused millions of dollars of capital" into some companies—his testimony does not clearly indicate which ones—does not prove that any of the Credit Nation entities whose assets are being distributed received money from the Clear Skies transaction.

\*        \*        \*

We agree with the district court that Schoenmann did not present "any credible evidence that funds from the Clear Skies … transaction flowed to Credit Nation."  We therefore hold that the district court did not err in granting Hill's motion to disallow Schoenmann's claim for the July 2007 payment of $5,096,940.

**B**

Schoenmann also contends that she is entitled to recover "write-off sums Torchia and his affiliated entities owed [Synergy] totaling $5,226,016."  Br. of Appellant at 11.  Specifically, she asserts that that Synergy "wrote off" the following debts as part of the June 2007 Clear Skies transaction:  $93,177 owed by

13

James Torchia; $4,457,623 owed by Synergy Motor Company; $545,216 owed by Dun Right Automotive; and $130,000 owed by National Viatical.

In granting Hill's motion to disallow Schoenmann's claim, the district court credited Hill's statement that he had reviewed the Credit Nation entities' records and found no evidence that any of those entities were the beneficiaries of any write-offs in connection with the June 2007 Clear Skies transactions. According to Hill, the Credit Nation entities were not even in existence at the time of the write-offs. On appeal, Schoenmann argues that the district court clearly erred in crediting Hill's testimony.

First, as to the write-off in favor of Torchia, Schoenmann contends that the Credit Nation entities are liable because Torchia and his entities should be treated as "one and the same." As explained above, that is incorrect. Because Schoenmann has not offered any evidence that the Credit Nation entities received any benefit from the write-off in favor of Torchia, the district court correctly disallowed that claim.

Second, as to the write-offs in favor of the other three entities—Synergy Motor Company, Dun Right Automotive, and National Viatical—Schoenmann summarily asserts that these entities are all somehow connected to Torchia. Again, Schoenmann is not entitled to receive assets from the Credit Nation entities merely because Torchia or some other entity related to him allegedly defrauded Synergy.

14

And in any event, Schoenmann has not shown that the district court clearly erred in crediting Hill's statement that the Credit Nation entities did not receive any benefit from the June 2007 write-offs.  We therefore conclude that the district court did not err in granting Hill's motion to disallow Schoenmann's claim for $5,226,016 in write-offs.

## III

For the reasons explained above, we hold that the district court did not err in granting Hill's motion to disallow Schoenmann's claim because Schoenmann failed to present any credible evidence showing that the Credit Nation entities received any money from Synergy.

**AFFIRMED.**

15